OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 28, 1999

Ms. Katherine A. Thomas, M.N., R.N.
Executive Director
Board of Nurse Examiners
   for the State of Texas
P.O. Box 430
Austin, Texas 78767-0430

Opinion No. JC-0117

Re: Whether the Board of Nurse Examiners may regulate the selection and administration of anesthesia and the care of an anesthetized patient by a certified registered nurse anesthetist, and related question (RQ-1143)

Dear Ms. Thomas:

The Board of Nurse Examiners has, "for many years," considered the selection and administration of anesthesia and the care of an anesthetized patient by a certified registered nurse anesthetist (a "CRNA") to be the practice of professional nursing rather than the delegated practice of medicine "requiring oversight/supervision by a physician." Letter from Penny Puryear Burt, Of Counsel, Board of Nurse Examiners for the State of Texas, to Honorable Dan Morales, Attorney General (June 5, 1998) (on file with Opinion Committee) [hereinafter "Board Letter of 6/5/98"]. You ask whether the Board's construction is correct. We conclude that your construction is correct only in part. Under the Nursing Practice Act, see Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, secs. 301.001-.555, 1999 Tex. Sess. Law Serv. 1431, 1665-98 (to be codified at TEX. OCC. CODE ANN., ch. 301), and under the Medical Practice Act, see id., § 1, secs. 151.001-165.160, 1999 Tex. Sess. Law Serv. 1431, 1461-1528 (to be codified at TEX. OCC. CODE ANN., chs. 151-165), the practice of professional nursing includes the selection and administration of anesthesia and the care of an anesthetized patient by a CRNA, but only when those tasks are delegated by a physician. Accordingly, we generally conclude that the Board of Nurse Examiners has authority to regulate the selection and administration of anesthesia and the care of an anesthetized patient by a CRNA. We further conclude that neither the Nursing Practice Act nor the Medical Practice Act requires a physician to delegate the selection or administration of anesthesia or the care of an anesthetized patient. If a physician does so, however, the delegating physician is not required as a matter of law to directly supervise the CRNA, but he or she may choose to do so. We discuss limitations on this authority more fully below.

The Nursing Practice Act, articles 4513 to 4528 of the Revised Civil Statutes, was repealed and reenacted by the Seventy-sixth Legislature as chapter 301 of the Texas Occupations Code. See Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 1, secs. 301.001-.555, 1999 Tex. Sess. Law Serv. 1431, 1665-98; id. § 6(a), 1999 Tex. Sess. Law Serv. at 2439-40 (repealing articles 4513-4528).

Similarly, the Medical Practice Act, article 4495b of the Revised Civil Statutes, was repealed and reenacted by the Seventy-sixth Legislature as chapters 151 to 165 of the Texas Occupations Code. *See id.* § 1, secs. 151.001-165.160, 1999 Tex. Sess. Law Serv. at 1461-1528; *id.* § 6(a), 1999 Tex. Sess. Law Serv. at 2439-40 (repealing article 4495b). For ease of citation, this opinion will refer to the provisions of these acts as they will be codified in the Occupations Code.

In the Board's view, when anesthesia is selected and administered by a CRNA, it is within the practice of nursing and need not be supervised by a physician. *See* Board Letter of 6/5/98, *supra.* By contrast, in the view of the physicians' organizations from which we have received briefing (Texas Medical Association, Texas State Board of Medical Examiners, American Society of Anesthesiologists, and Texas Society of Anesthesiologists), the selection and administration of anesthesia is a medical practice that may be delegated to a CRNA provided that the physician "provides proper supervision." Letter from Donald P. Wilcox, General Counsel, & C. J. Francisco, III, Senior Counsel, Texas Medical Association, to Honorable Dan Morales, Attorney General (July 23, 1998); *see also* Letter from Vernon L. Ryan, M.D., Chairman, Standing Orders Committee, Texas State Board of Medical Examiners, to Honorable Dan Morales, Attorney General (Sept. 9, 1998); Letter from Michael Scott, Esq., Director, Governmental and Legal Affairs, American Society of Anesthesiologists ("ASA"), to Ms. Sarah Shirley, Office of the Attorney General (July 30, 1998) [hereinafter "ASA Letter of 7/30/98"]; Letter from John M. Zerwas, M.D., Texas Society of Anesthesiologists ("TSA"), to Fellow Member of the TSA (Jan. 31, 1997). (All letters are on file with the Opinion Committee.) As the American Society of Anesthesiologists states, a nurse anesthetist is "qualified to perform certain functions in connection with the patient's treatment, such as monitoring and technical delivery, provided that the anesthesiologist or other physician remains available to the patient." ASA Letter of 7/30/98, *supra*, at 5.

The contrasting views present, in truth, two issues: first, whether the selection and administration of anesthesia and maintenance of an anesthetized patient by a CRNA is the practice of medicine, properly regulated by the Board of Medical Examiners, or the practice of nursing, properly regulated by the Board; and second, the degree to which a physician who chooses to delegate anesthesia-related tasks must, under the Nursing Practice Act and the Medical Practice Act, supervise the CRNA to whom the tasks have been delegated. We consider these issues separately.

We begin by examining the breadth of the practice of professional nursing under the Nursing Practice Act. Among other things, the Board of Nurse Examiners is authorized to "determine whether an act constitutes the practice of professional nursing" consistent with the Nursing Practice Act. TEX. OCC. CODE ANN. § 301.151(4). The practice of professional nursing is defined to include the performance of certain acts delegated by a physician:

> "Professional nursing" means the performance for compensation of an act that requires substantial specialized judgment and skill, the proper performance of which is based on knowledge and application of the principles of biological, physical, and social science as acquired by a completed course in an approved school of

professional nursing. The term does not include acts of medical diagnosis or prescription of therapeutic or corrective measures. Professional nursing involves:

. . . .

(G) the performance of an act delegated by a physician under Section 157.052, 157.053, 157.054, 157.058, or 157.059.

*Id.* § 301.002(2)(G). The Board of Nurse Examiners is also required to adopt rules to "approve a registered nurse as an advanced practice nurse." *Id.* § 301.152(b)(2). The terms "advanced nurse practitioner" and "advanced practice nurse," which have the same meaning, may include a CRNA. *Id.* § 301.152(a).

The Medical Practice Act creates the Texas State Board of Medical Examiners to regulate the practice of medicine in this state. *See id.* §§ 152.001-.059, 153.001-.055. Under that act, a person practices medicine when the person diagnoses, treats, or offers to treat "a mental or physical disease or disorder or a physical deformity or injury by any system or method, or . . . attempt[s] to effect cures of those conditions" either (1) while professing to be a physician or a surgeon or (2) for direct or indirect compensation. *Id.* § 151.002(13) (defining "[p]racticing medicine"). Nevertheless, the Medical Practice Act does not apply to a properly licensed registered or vocational nurse "engaged strictly in the practice of nursing in accordance with the applicable licensing acts and other laws of this state." *Id.* § 151.052(a)(4).

Chapter 157 of the Occupations Code describes circumscribed situations in which a physician may delegate particular tasks. Section 157.058 explicitly allows a physician to delegate anesthesia-related services to a CRNA in certain settings:

(a) In a licensed hospital or ambulatory surgical center, a physician may delegate to a certified registered nurse anesthetist the ordering of drugs and devices necessary for the nurse anesthetist to administer an anesthetic or an anesthesia-related service ordered by the physician.

(b) The physician's order for anesthesia or anesthesia-related services is not required to specify a drug, dose, or administration technique.

(c) Pursuant to the physician's order and in accordance with facility policies or medical staff bylaws, the nurse anesthetist may select, obtain, and administer those drugs and apply the medical devices appropriate to accomplish the order and maintain the patient within a sound physiological status.

> (d) This section shall be liberally construed to permit the full use of safe and effective medication orders to use the skills and services of certified registered nurse anesthetists.

*Id.* § 157.058.

The Board of Nurse Examiners has adopted rules defining the practice of CRNAs.   Under the Board's rules, a CRNA may select, obtain, and administer anesthesia and anesthesia-related services in certain facilities in accordance with a physician's order if the facility policy or medical staff bylaws permit it:

> (a)   In a licensed hospital or ambulatory surgical center, consistent with facility policy or medical staff bylaws, a nurse anesthetist may select, obtain and administer drugs, including determination of appropriate dosages, techniques and medical devices for their administration and in maintaining the patient in sound physiologic status pursuant to a physician's order for anesthesia or an anesthesia-related service.   This order need not be drug-specific, dosage specific, or administration-technique specific.

> (b)   Pursuant to a physician's order for anesthesia or an anesthesia-related service, the nurse anesthetist may order anesthesia-related medications during perianesthesia periods in the preparation for or recovery from anesthesia.   Another RN may carry out these orders.

> (c)   In providing anesthesia or anesthesia-related service, the nurse anesthetist shall select, order, obtain and administer drugs which fall within categories of drugs generally utilized for anesthesia or anesthesia-related services and provide the concomitant care required to maintain the patient in sound physiologic status during those experiences.

22 TEX. ADMIN. CODE § 222.6 (1999) (Texas Board Of Nurse Examiners, Advanced Practice Nurses).

The practice of professional nursing, subject to the Nursing Practice Act, and the practice of medicine, subject to the Medical Practice Act, overlap.  *See* Tex. Att'y Gen. Op. Nos. MW-318 (1981) at 3, H-1295 (1978) at 2, H-27 (1973) at 3-4. Thus, even though selecting and administering anesthesia and maintaining an anesthetized patient may be within the scope of the practice of medicine, *see* TEX. OCC. CODE ANN. § 151.002(13) (defining "[p]racticing medicine"); *McKinney v. Tromly*, 386 S.W.2d 564, 565 (Tex. Civ. App.–Tyler 1964, writ ref'd n.r.e.) (stating that administration of anesthesia constitutes practice of medicine); STEDMAN'S MEDICAL DICTIONARY

81 (26th ed. 1995) (defining "anesthesiology"); *cf. Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 943 (Tex. App.–Fort Worth 1997, pet. dism'd by agr.) (stating evidentiary finding in that case that practice of anesthesia is "specialized practice of medicine"), the tasks also may be within the scope of professional nursing. Insofar as a task is within the scope of practice of professional nursing when performed by a professional nurse, it is subject to regulation by the Board of Nurse Examiners, not the Board of Medical Examiners. This is true even though the task is within the scope of the practice of medicine when performed by a physician and, in that instance, is subject to regulation by the Board of Medical Examiners.

A CRNA who acts under a physician's order for "general anesthesia" does not practice medicine. *See Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 825-26 (Tex. App.–Amarillo 1995, writ denied). The plaintiff in *Drennan* alleged in part that a CRNA illegally practiced medicine without a license by securing a particular drug without a written prescription or standing order. *See id.* at 822. The court rejected the plaintiff's claim: "It suffices, for the purpose of this contention, to state that [the CRNA's] services were engaged by [a physician], who was authorized to delegate to [the CRNA], by order, the act of administering or providing the anesthesia." *Id.* (citing TEX. REV. CIV. STAT. ANN. art. 4495b, § 3.06(d) (Vernon Supp. 1995), *repealed by* Act of May 13, 1999, 76th Leg., R.S., ch. 388, § 6(a), 1999 Tex. Sess. Law Serv. 1431, 2439-40, and to be recodified at chapter 157 of the Texas Occupations Code, *see id.* § 1, secs. 157.001-.101, 1999 Tex. Sess. Law Serv. at 1490-98). While *Drennan* concludes that the selection and administration of anesthesia is not the practice of medicine when those acts have been delegated to a CRNA, neither it nor any other Texas court case affirmatively considers whether the selection and administration of anesthesia and maintenance of an anesthetized patient by a CRNA are within the scope of professional nursing.

We believe that these tasks are within the practice of nursing for a CRNA, but only when the tasks are properly delegated to the CRNA by a physician. The Medical Practice Act authorizes a CRNA, "[p]ursuant to the physician's order and in accordance with facility policies or medical staff bylaws," to "select, obtain, and administer" an anesthetic and to "maintain the patient within a sound physiological status." *See* TEX. OCC. CODE ANN. § 157.058(c). Consistently with the Medical Practice Act, the Nursing Practice Act explicitly defines the term "professional nursing" to include the selection and administration of anesthesia when delegated by a physician under section 157.058 of the Occupations Code. *Id.* § 301.002(2)(G). In that regard, the Medical Practice Act excepts from its coverage professional nurses practicing strictly within the Nursing Practice Act. *See id.* § 151.052(4).

The Board of Nurse Examiners accordingly may regulate the selection and administration of anesthesia by a CRNA to whom a physician has delegated "the ordering of drugs and devices necessary . . . to administer" anesthesia, *id.* § 157.058(a), even though the functions are the practice of medicine under the Medical Practice Act and are subject to regulation by the Board of Medical Examiners when performed by a physician. *Cf.* Tex. Att'y Gen. Op. Nos. DM-443 (1997) at 2 (concluding that both Board of Medical Examiners and Board of Physical Therapy Examiners have authority to regulate needle electromyography); DM-423 (1996) at 1, 4 (concluding that hyperbaric

oxygen therapy may be practice of medicine and subject to regulation by Board of Medical Examiners and also may be practice of podiatry and subject to regulation by Board of Podiatric Medical Examiners). This dichotomy enables the licensing agency with authority over the particular profession at issue to regulate the practice of that profession. Hence, a CRNA practicing in accordance with a proper delegation from a physician is within the scope of the practice of nursing and is subject to the board that regulates the practice of nursing, while a physician, practicing within the scope of the practice of medicine, is subject to the body that regulates the practice of medicine.

Further, we believe a court would find that the Board of Nurse Examiner's rule authorizing a CRNA to select, obtain, and administer anesthesia and anesthesia-related services in certain facilities and in accordance with a physician's order, if facility policy or medical staff bylaws permit it, *see* 22 TEX. ADMIN. CODE § 222.6 (1999) (Texas Board of Nurse Examiners, Advanced Practice Nurses), reasonably construes the Nursing Practice Act. A regulatory determination by the Board of Nurse Examiners that a particular practice constitutes the practice of nursing will be upheld by a court so long as the regulatory interpretation of the Nursing Practice Act is reasonable. *See* TEX. OCC. CODE ANN. § 301.151(4) (requiring Board's determination that certain practice constitutes practice of nursing to accord with Act); *see also Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (stating that reasonable construction of statute by administrative agency charged with its enforcement is entitled to "serious consideration"); *State v. Evangelical Lutheran Good Samaritan Soc'y*, 981 S.W.2d 509, 513 (Tex. App.–Austin 1998, no pet.) (stating that reasonable construction of statute by administrative agency charged with its enforcement is entitled to "substantial weight"). We believe this rule is reasonable, particularly in view of the fact that it approximates the language of section 157.058 of the Occupations Code. In addition, assuming that a physician's order is the means by which a physician delegates authority to a CRNA under section 157.058 of the Occupations Code, the rule appears consistent with the Board of Medical Examiners' rule on delegation to a CRNA, *see* 22 TEX. ADMIN. CODE § 193.6(k)(1) (1999) (Texas Board of Medical Examiners).

Finally, section 157.058(d) of the Occupations Code directs us liberally to construe a physician's authority to delegate anesthesia-related tasks to a CRNA "to permit the full use of safe and effective medication orders to use the skills and services of certified registered nurse anesthetists." TEX. OCC. CODE ANN. § 157.058(d). The Medical Practice Act thus contemplates the full use of CRNAs, exempts CRNAs from the Medical Practice Act in executing anesthesia-related tasks that are within the scope of the practice of nursing, and, we think, leaves the regulation of such tasks as performed by CRNAs to the Board of Nurse Examiners. Of course, a physician need not delegate the selection or administration of anesthesia or the maintenance of an anesthetized patient in the first place.

The fact that the provision of anesthesia-related services performed by a CRNA is within the practice of nursing and subject to regulation by the Board of Nurse Examiners does not bear on the extent to which a physician who chooses to delegate anesthesia-related tasks must supervise a CRNA's performance. We conclude that the Medical Practice Act does not require a physician to directly superintend a CRNA in the performance of delegated anesthesia-related tasks. Nor, on the

other hand, does it absolve a physician of responsibility for an imprudent delegation. *See id.* § 157.060 (stating that physician may not be liable for act of advanced practice nurse to whom physician delegated tasks unless physician had reason to believe nurse was incompetent to perform delegated act).

The Medical Practice Act permits a physician to delegate anesthesia-related tasks to a CRNA without reference to supervision. Section 157.058 of the Occupations Code expressly allows a physician in a licensed hospital or ambulatory surgical center setting to "delegate" the ordering of drugs and devices to a CRNA. *Id.* § 157.058. Nothing in either the Nursing Practice Act or the Medical Practice Act requires a physician to "supervise" a CRNA's performance under section 157.058 of the Occupations Code. By contrast, other sections of the Medical Practice Act expressly mandate physician supervision of delegated functions. For example, a registered nurse who carries out a prescription drug order upon a delegation under section 157.052(c) of the Occupations Code must have "adequate physician supervision." *Id.* § 157.052(c); *see also id.* § 157.052(e) (requiring and defining "adequate physician supervision"). Likewise, a physician may delegate to an advanced nurse practitioner "acting under *adequate physician supervision* whose practice is facility-based at a licensed hospital or licensed long-term care facility, the administration or provision of a drug and the carrying out or signing of a  prescription drug order" in certain limited circumstances. *Id.* § 157.054 (emphasis added). And a physician may delegate to a pharmacist "*acting under adequate physician supervision* the performance of specific acts of drug therapy management." *Id.* § 157.101(b) (emphasis added); *see also id.* § 157.101(c) (defining "adequate physician supervision" of a pharmacist).

The legislature's choice of the word "delegate" as opposed to, and without reference to, "supervise" in section 157.058 of the Occupations Code indicates that a physician may less directly oversee a CRNA's performance than a physician who has delegated tasks under other subdivisions of the Medical Practice Act. While the term "supervise" indicates "general oversight over, to superintend or to inspect," BLACK'S LAW DICTIONARY 1299 (5th ed. 1979); *accord* XVII OXFORD ENGLISH DICTIONARY 245 (2d ed. 1989) (defining "supervise"), the term "delegate" denotes a deputization of one person, *e.g.*, a CRNA, to act as the agent of the other, *e.g.*, the physician, *see* BLACK'S LAW DICTIONARY 383 (5th ed. 1979) (defining "delegate" and "delegation"); *accord* IV OXFORD ENGLISH DICTIONARY 411 (2d ed. 1989) (defining "delegate"). Moreover, section 157.058(b) specifies that the physician's order need not "specify a drug, dose, or administration technique," and section 157.058(d) directs us liberally to construe the section to utilize the skills and services of CRNAs. TEX. OCC. CODE ANN. § 157.058. All of these factors favor our reading that a physician who properly delegates anesthesia-related tasks to a CRNA is not required, as a matter of law, by the Medical Practice Act to supervise the CRNA's performance of those tasks.

Consequently, section 157.058 does not require that a physician directly supervise a CRNA's selection and administration of the anesthesia. Rather, the extent of physician involvement is left to the physician's professional judgment in light of other relevant federal and state laws, facility policies, medical staff bylaws, and ethical standards. *See id.* §§ 157.001, .007, .058. For example, federal regulations limiting medicare coverage and conditioning hospital participation in medicare

and medicaid programs currently require a CRNA to be supervised by the operating physician when the CRNA administers anesthesia. *See* 42 C.F.R. §§ 416.42(b)(2), 482.52(a)(4), 485.639(c)(1)(v), (2) (1998) (requiring, for certain purposes, CRNA to be under operating physician's supervision when administering anesthesia). Under state law, a CRNA may not administer an anesthetic that is a controlled substance outside the presence of a physician. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(1)(A), .071(a) (Vernon 1992) (defining "administer" to require agent to apply controlled substance in presence of physician; prohibiting physician from causing controlled substance to be administered under physician's "direction and supervision" except for valid medical purpose and in course of medical practice). Nor may a CRNA obtain an anesthetic that is a dangerous drug unless a physician has listed that CRNA as the physician's designated agent. *See id.* §§ 483.001(4), .022(a) (Vernon Supp. 1999) (defining "designated agent"; requiring physician to name each designated agent in writing). In addition, a physician who delegates professional medical acts to a person whom the physician knows or should know is unqualified to perform the acts may be disciplined. *See* TEX. OCC. CODE ANN. § 164.053(a)(9). In sum, the authority to delegate provided by the Nursing Practice Act and section 157.058 of the Occupations Code does not eliminate the need to comply with all other applicable statutes, regulations, bylaws, and ethical standards.

While section 157.058 authorizes a physician to delegate to a CRNA without requiring direct physician oversight, a physician is never required to do so. If a physician is concerned about a CRNA's ability to perform a delegated task or simply wishes to limit the delegation, the physician retains the authority to refrain from delegating or to limit the delegation.

We have considered a CRNA's authority to select and administer anesthesia and to maintain an anesthetized patient in a licensed hospital or ambulatory surgical center, and the Board's jurisdiction to regulate CRNAs in the execution of that authority, in light of section 157.058 of the Occupations Code because that subsection is most directly applicable to CRNAs. Your question, however, is not expressly limited to a CRNA's authority to administer anesthesia in a hospital or surgical setting under section 157.058. It is possible that a CRNA may in fact be called upon to administer anesthesia in another setting, such as a physician's office. Other sections of chapter 157, subchapter B may authorize a CRNA to administer anesthesia in settings other than a hospital or ambulatory surgical center. For example, a CRNA may perform delegated medical acts under section 157.001, or a CRNA may administer dangerous drugs, which may include anesthesia, *see* TEX. HEALTH & SAFETY CODE ANN. § 483.001(2) (Vernon Supp. 1999) (defining "dangerous drug"), in a physician's office under section 157.002. Under section 157.052(c) of the Occupations Code, a nurse acting under "adequate physician supervision" may administer a prescription drug at a site serving a medically underserved population. *See* TEX. OCC. CODE ANN. § 157.052 (requiring protocols, defining "adequate physician supervision" and "site serving a medically underserved population").

But only those acts delegated under section 157.052, 157.053, 157.054, 157.058, or 157.059 of the Occupations Code are within the scope of professional nursing. *See id.* § 301.002(2)(G) (defining "professional nursing" to include performance of all acts delegated by physician under section 157.052, 157.053, 157.054, 157.058, or 157.059 of Occupations Code). Accordingly, in

addition to the administration of anesthesia under section 157.058, the Board of Nurse Examiners also may regulate the administration of anesthesia that may occur under sections 157.052, 157.053, 157.054, and 157.059, but not under any other subsection of the Medical Practice Act. Unlike the administration of anesthesia under section 157.058, however, sections 157.052, 157.053, and 157.054 expressly require that a physician adequately supervise the nurse's performance. Section 157.059, regarding the delegation of certain obstetrical services, requires that the physician be adequately available for access to medical care. *Id.* § 157.059(d).

**S U M M A R Y**

The Board of Nurse Examiners may regulate the selection and administration of anesthesia and the maintenance of anesthetized patients by certified registered nurse anesthetists where anesthesia-related tasks have been delegated by a physician under section 157.058 of the Occupations Code. Section 157.058 does not require that a physician directly supervise the CRNA's selection and administration of the anesthesia. Rather, the extent of physician involvement is left to the physician's professional judgment in light of other federal and state laws, facility policies, medical staff bylaws, and ethical standards.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General - Opinion Committee